## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JACQUELENE P. DAVIS,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 07-CV-0723-CVE-SAJ** |
| | ) | |
| AHS PAWNEE HOSPITAL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### OPINION AND ORDER

Now before the Court are the following motions: Defendants' [AHS Management Services of Oklahoma, LLC, AHS Holdings, Inc., AHS Management Company, Inc., AHS Oklahoma Health System, LLP, Ardent Health Services, LLC, and Ardent Community Foundation, Inc.] Renewed Motion to Dismiss All Claims Against Defendants and Incorporated Brief in Support (Dkt. # 145);[2] Pawnee Healthcare Properties, LLC's; Community Partners, LLC's; and Bristow Healthcare Properties, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support

---

[1]  In the caption of her complaint, plaintiff's name is spelled "Jacqelene P. Davis" but, in an affidavit attached to the complaint, plaintiff's name is spelled "Jacquelene P. Davis" and she signs her name with a "u" between "q" and "e." See Dkt. # 1; Id., Ex. 1.  In her EEOC charge, plaintiff also spelled her name "Jacquelene P. Davis." Id., Ex. 2.  The Court will amend the caption to reflect the correct spelling of plaintiff's name and plaintiff's counsel is advised to correct the caption to reflect this change in all future pleadings.

[2]  For clarity, the Court will refer to AHS Management Services of Oklahoma, LLC, AHS Holdings, Inc., AHS Management Company, Inc., AHS Oklahoma Health System, LLP, Ardent Health Services, LLC, and Ardent Community Foundation, Inc. as the "Ardent Defendants" throughout this Opinion and Order.

(Dkt. # 148);[3] Defendants' [AHS Holdings, Inc., AHS Management Company, Inc., AHS Oklahoma Health System, LLP, Ardent Health Services, LLC, and Ardent Community Foundation, Inc.] Motion for Sanctions and Incorporated Brief in Support (Dkt. # 162); and Defendants' Motion to Extend Deadline to File Dispositive Motions (Dkt. # 199).[4] Defendants have also filed a Motion to Stay Discovery and Remaining Deadlines (Dkt. # 171) until the Court rules on their motions to dismiss. In light of this Opinion and Order disposing of defendants' motions to dismiss, the motion to stay discovery and other deadlines is moot.

## I.

In June 2005, Jacqueline C. Davis began working as a registered nurse at Pawnee Municipal Hospital. One of the physicians at the hospital, W. Edward Clymer, D.O., allegedly made unwanted sexual advances toward Davis and touched her in an offensive manner on several occasions. Dkt. # 140, at 5. She asked Dr. Clymer to stop his behavior, but she claims that his offensive conduct continued. Davis alleges that two other employees, Dorothy Funkhouser and Robin Roberts, were subjected to similar treatment by Dr. Clymer. Davis, Funkhouser, and Roberts filed separate complaints with the Oklahoma Osteopathic Licensing Board concerning Dr. Clymer's behavior, and

---

[3]     Defendants also filed motions to dismiss plaintiff's amended complaint. See Dkt. ## 37, 54, 106, 108. Plaintiff's second amended complaint superseded her amended complaint and her amended complaint is without legal effect. Mink v. Suthers, 482 F.3d 1244, 1254 (10th Cir. 2007). Therefore, defendants' motions to dismiss the amended complaint are moot.

[4]     Defendants ask the Court to extend the dispositive motion deadline from January 2, 2008 to January 23, 2008. Dkt. # 199. They state that six depositions are scheduled during the next three weeks and they will not be able to prepare dispositive motions until they receive transcripts from those depositions. Although plaintiff's counsel did not clearly indicate if this motion is opposed or unopposed, the Court finds that all parties, including plaintiff, may need additional time to review deposition transcripts in order to prepare dispositive motions, and defendants' motion should be granted.

Davis claims that she informed other employees of her charges against Dr. Clymer.  Id. at 6. However, she did not notify her supervisors or any management level employee at Pawnee Municipal Hospital about Dr. Clymer's behavior.  She alleges that Pawnee Municipal Hospital did not have a human resources department or a written policy permitting her to report Dr. Clymer's conduct to anyone at the hospital.  Id. at 8.  She also claims that she feared her employer would retaliate against her if she reported Dr. Clymer's harassment.  Id.

On April 16, 2007, Davis filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Pawnee Municipal Hospital discriminated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, et seq. ("Title VII").  She claimed that she was subject to unwanted sexual harassment by Dr. Clymer beginning in November 2005, and she told a co-worker about the harassment.  In her charge, she alleged that the co-worker made a "report" and, since that time, she was not subjected to further sexual harassment or retaliated against by her employer.  Dkt. # 145, Ex. 1.  She identified her employer as "Pawnee Municipal Hospital" and no other entities were listed in the charge.  Id.  The EEOC issued a right to sue letter on October 3, 2007, without making any specific findings on Davis' claim of sexual harassment.  Id., Ex. 2.

Davis filed this lawsuit on December 27, 2007, alleging claims of sexual harassment under Title VII, intentional infliction of emotional distress, and negligent hiring against her employer.  She also alleged an intentional tort claim against Dr. Clymer.  Although Davis named Pawnee Municipal Hospital as a defendant, she also named 12 corporate entities and "unknown others" as her employer.  Dkt. # 1.  She claims that Pawnee Municipal Hospital was owned by "Ardent" and, because she was unclear about the corporate identity of her employer, she named numerous Ardent

3

entities as defendants in her original complaint.  She also sued Community Partners, LLC and Hillcrest Healthcare Systems as entities that had an ownership interest in Pawnee Municipal Hospital at some time.  By March 2008, Davis had not served any of the defendants.  On March 11, 2008, she filed a motion (Dkt. # 5) requesting leave to serve discovery requests with a copy of the complaint and summons, and Magistrate Judge Sam A. Joyner granted her motion.  Davis began to serve some of the defendants, but she failed to serve all of the defendants named in her complaint within 120 days.  She requested an extension of time to effect service and the Court extended her time to serve defendants until June 24, 2008.  Dkt. # 24.

On May 2, 2008, Davis filed an amended complaint adding five defendants.  The new defendants were Ardent subsidiaries and this was their sole connection to Davis' claims.  The Ardent Defendants filed motions to dismiss (Dkt. ## 37, 106, 108) on the grounds that Davis had not exhausted her administrative remedies for her Title VII claim against these defendants and she failed to state a claim upon which relief could be granted.  The Ardent Defendants asserted that they were not named in Davis' EEOC charge and were not plaintiff's employer, and Davis had not exhausted her remedies for her Title VII claim against these defendants.  They also argued that Davis' EEOC charge clearly states that any harassment ended immediately after her employer learned of Dr. Clymer's conduct, and her employer did not violate Title VII.  Defendants Pawnee Healthcare Properties, LLC, Community Partners, LLC, and Bristow Healthcare Properties filed a motion to dismiss adopting the same arguments, except for issues related to plaintiff's failure to name these defendants in her EEOC charge.[5]  Dkt. # 54.

---

[5]     Defendant Hillcrest Healthcare System also filed a motion to dismiss (Dkt. # 38), but Davis subsequently dismissed this defendant and the motion to dismiss was moot.

Magistrate Judge Joyner set a telephonic discovery status conference for May 27, 2008. Before the hearing, the Ardent Defendants filed a motion to limit any discovery to jurisdictional issues until the identity of Davis' employer had been resolved. Dkt. # 57. Davis responded by filing several motions seeking expedited discovery responses from various defendants. Dkt. ## 61, 63, 66, 67. She also claimed that some defendants had responded to her discovery requests, but had submitted incomplete or redacted responses. Magistrate Judge Joyner set another hearing for June 5, 2008 to consider the numerous discovery motions filed by the parties. Davis also sought an extension of time to respond to defendants' motions to dismiss until she received complete discovery responses. Dkt. # 70. The Court denied her motion for an extension of time because plaintiff did not need discovery to respond to motions to dismiss based only on the pleadings.[6] Dkt. # 76.

On May 27, 2008, Magistrate Judge Joyner denied plaintiff's motions for additional jurisdictional discovery. He found that defendants had already provided all discovery relating to the identity of plaintiff's employer and plaintiff did not need any additional information to determine the identity of her employer. He ordered plaintiff to dismiss unnecessary defendants after she had an opportunity to review defendants' discovery responses. He also "admonished Plaintiff's counsel to insure that she is in compliance with Fed. R. Civ. P. 11" and warned her that the failure to dismiss unnecessary parties could result in a monetary sanction. Dkt. # 100. Magistrate Judge Joyner struck the June 5, 2008 hearing, and gave defendants 10 days to supplement their discovery responses if

---

[6]     Plaintiff also filed a "precautionary" appeal of Magistrate Judge Joyner's May 7, 2008 order (Dkt. # 49) setting a hearing for June 5, 2008, because she was concerned that he could limit her right to conduct discovery on the merits of her claims. Dkt. # 87. The Court explained that "[t]here is no such thing as a 'precautionary appeal'" and denied her appeal as premature. Dkt. # 88.

they had additional information that could clarify the identity of plaintiff's employer.  However, he continued the stay of non-jurisdictional discovery pending a ruling on the motions to dismiss.

Davis subsequently dismissed defendants Hillcrest Healthcare System, Ardent Services LLC, and Ardent Medical Consultants, PLLC.  Dkt. ## 113, 114, 117.  On June 24, 2008, plaintiff's extended deadline to serve all defendants expired and she requested additional time to serve "[d]efendants and unknown others."  Dkt. # 127.  The Court denied her motion because plaintiff had not shown good cause for the delay in serving defendants.  Dkt. # 128.  However, the Court stated that plaintiff could renew her motion if she discovered specific information clarifying her employer's identity and needed additional time to serve the proper party or file an amended complaint.  The Court set a hearing on the defendants' motions to dismiss for July 8, 2008.

At the hearing on July 8, 2008, the primary issue before the Court was the identity of plaintiff's employer.  The Court reviewed the evidence presented by the parties and conferred with counsel for all parties to create a timeline of the ownership status of Pawnee Municipal Hospital. From June 2005 to July 1, 2006, the hospital was owned by AHS Pawnee Hospital, LLC.  Dkt. # 134, at 5.  AHS Pawnee Hospital, LLC was wholly owned by AHS Oklahoma Health System, LLP. AHS Oklahoma Health System, LLP sold its ownership interest in AHS Pawnee Hospital, LLC to Community Properties, LLC on July 1, 2006 but, as a condition of the sale, hospital employees were leased for a period of one month to AHS Management Services of Oklahoma, LLC.  Id. at 4-5. Before AHS Oklahoma Health System, LLP completed the sale of Pawnee Municipal Hospital, it held a meeting with hospital employees notifying them of the impending sale and the identity of their new employer. Dkt. # 145, Ex. 6.  Community Properties, LLC established an entity called Pawnee Healthcare Properties, LLC and this entity owned the hospital and employed all hospital

6

employees after August 1, 2006.  Donna Smith, counsel for Pawnee Healthcare Properties, LLC, and Patrick Clark, counsel for AHS Pawnee Hospital, LLC and AHS Management Services of Oklahoma, LLC, acknowledged that their clients employed Davis during the specified dates and they agreed to enter into stipulations with plaintiff's counsel to confirm Davis' employment status for purposes of this lawsuit.  Dkt. # 134, at 37. During the hearing, the Court twice advised plaintiff's counsel about the need to dismiss unnecessary defendants to avoid sanctions under Rule 11.  Id. at 8, 19.  The Court granted Davis leave to file a second amended complaint to "clean up the list of defendants" and to clarify her allegations about her employer's knowledge of Dr. Clymer's conduct. Id. at 19.  The second amended complaint was due no later than August 1, 2008.

On August 1, 2008, Davis requested an extension of time to file her second amended complaint, because she had not received answers to all of her discovery requests and defendants were allegedly unwilling to sign her proposed stipulations.  Dkt. # 138.  The Court denied her motion and ordered plaintiff to file her second amended complaint by August 4, 2008.  Dkt. # 139. The second amended complaint named 20 defendants and unknown others, including two entities that had not previously been named as defendants and did little to clarify plaintiff's prima facie case of sexual harassment under Title VII.  Plaintiff subsequently dismissed Bristow Hospital Authority, the City of Pawnee, and Pawnee Municipal Hospital.  Dkt. ## 142, 143.  The remaining corporate defendants renewed their motions to dismiss.  On October 8, 2008, five defendants filed a motion for sanctions against plaintiff's counsel on the ground that she filed frivolous claims against defendants who never employed plaintiff and, even after judicial intervention, has not dismissed these defendants from the case when defendants's discovery responses clearly established the corporate identity of plaintiff's employer.

## II.

The Ardent Defendants seek dismissal of plaintiff's Title VII claim under Fed. R. Civ. P. 12(b)(1) on the ground that plaintiff has not exhausted her administrative remedies against these defendants. They argue that these entities, with the exception of AHS Management Services of Oklahoma, LLC, never employed plaintiff, and they may not be treated as having constructive notice of plaintiff's EEOC charge. Because it is clear that the Ardent Defendants were not named in plaintiff's EEOC charge, they claim that plaintiff did not exhaust her administrative remedies and her Title VII claim against the Ardent Defendants should be dismissed. Plaintiff claims that the Ardent Defendants have provided incomplete discovery responses and the Court should not rule on the Ardent Defendants' motion to dismiss until she has had an opportunity to review complete and unredacted discovery responses.

## A.

The exhaustion of administrative remedies is a jurisdictional prerequisite under Title VII, and the Ardent Defendants' motion to dismiss should be treated as a 12(b)(1) motion. See Shikles v. Sprint/United Management Co., 426 F.3d 1304, 1317 (10th Cir. 2005); Woodman v. Runyon, 132 F.3d 1330, 1342 (10th Cir. 1997). When considering a motion to dismiss under Rule 12(b)(1), the Court must determine whether the defendant is facially attacking the complaint or challenging the jurisdictional facts alleged by the plaintiff. In Holt v. United States, 46 F.3d 1000 (10th Cir. 1995), the Tenth Circuit stated:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

8

> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends.  When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. . . .  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

Id. at 1002-03.  The Ardent Defendants rely on evidence outside of the pleadings, and the Court will construe their motion as a factual attack on the jurisdictional facts alleged by plaintiff.  When ruling on a factual attack to the complaint, a court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts" without converting the motion into a motion for summary judgment.  Stuart v. Colorado Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting Holt, 46 F.3d at 1003); see also Davis ex rel. Davis v. United States, 343 F.3d 1282, 1295-96 (10th Cir. 2003) (district court had authority to review evidence outside the pleadings on issue of exhaustion of administrative remedies without converting the defendant's motion to dismiss into a motion for summary judgment).  To defeat the Ardent Defendants' Rule 12(b)(1) motion, "plaintiff must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence."  Southway v. Central Bank of Nigeria, 328 F.3d 1267, 1274 (10th Cir. 2003).

## B.

The Ardent Defendants argue that plaintiff failed to exhaust her administrative remedies for her Title VII claim against these defendants, because they were not named in plaintiff's EEOC charge and can not be considered plaintiff's employer under Tenth Circuit precedent.  Plaintiff claims that she sufficiently notified defendants of her claims by listing "Ardent, Hillcrest, AHS

Pawnee Hospital, [and] AHS Management Services of Oklahoma, LLC" as possible employers during the EEOC proceedings.[7]  Dkt. # 158, at 22.

To proceed against a party with a Title VII claim, the plaintiff must name the defendant as his or her employer in an EEOC charge.  Knowlton v. Teltrust Phones, Inc., 189 F.3d 1177, 1185 (10th Cir. 1999).  The Tenth Circuit has recognized two narrow exceptions to this rule in situations when "the defendant was informally referred to in the body of the charge or where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation." Romero v. Union Pac. R.R., 615 F.2d 1303 (10th Cir. 1980).  In Romero, the Tenth Circuit stated four factors that should be considered when a plaintiff attempts to bring a Title VII lawsuit against a defendant not named in the plaintiff's EEOC charge:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interest of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

Id. at 1312 (quoting Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977)).

---

[7]     Plaintiff also argues that the Court should not dismiss any defendants until she receives complete discovery responses.  She also alleges that the Ardent Defendants have hidden their relationship to Pawnee Municipal Hospital by redacting documents.  The Court has given plaintiff substantial leeway in conducting jurisdictional discovery and defendants have responded to her relevant discovery requests.  See Dkt. # 100.  Plaintiff largely ignored the evidence defendants have produced and relied on generic legal principles, rather than concrete facts in her possession, when responding to the Ardent Defendants' motion to dismiss.  Therefore, plaintiff's complaints about the discovery process do not prevent the Court from considering the Ardent Defendants' motion to dismiss.

In her EEOC charge, plaintiff identified "Pawnee Municipal Hospital" as her employer. Dkt. # 145, Ex. 1.  This could reasonably alert the entity responsible for managing the hospital of plaintiff's claim and provide sufficient notice to her actual employer to participate in the EEOC proceedings.  Plaintiff filed her EEOC charge on April 16, 2007 and defendant Pawnee Healthcare Properties, LLC has admitted that it owned and managed the hospital on that date.  This defendant, along with AHS Pawnee Hospital, LLC[8] and AHS Management Services of Oklahoma, LLC, employed plaintiff at some time prior to her filing of an EEOC charge and during the events giving rise to her sexual harassment claim.  Defendants Ardent Health Services, LLC, AHS Holdings, Inc., AHS Management Company, Inc., AHS Oklahoma Health System, LLP, and Ardent Community Foundation argue that they were not plaintiff's employer at any time and should not be treated as having constructive notice of the EEOC proceedings.  These defendants are part of the broader Ardent enterprise, but they argue that they had no direct control over Pawnee Municipal Hospital. The second amended complaint states that Ardent Health Services, LLC is the parent of Ardent Health Systems, Inc.  Plaintiff alleges that Ardent Health Services, LLC, through its subsidiaries, managed Pawnee Municipal Hospital and refers to her employer as the "'Ardent Health Services' enterprises."  Dkt. # 140, at 5.  She also alleges that Pawnee Municipal Hospital "continues to be owed [sic] and managed by various above named Defendants, including but not limited to the Community Partners, 'Ardent,' and AHS entities."  Id. at 7.  The Ardent Defendants, except for those who admit to employing plaintiff, assert that these allegations are insufficient to relieve plaintiff of her obligation to name them in her EEOC charge because these defendants were not

---

[8]     Defendant AHS Pawnee Hospital has not been served and, based on representations by defense counsel, this entity may no longer exist.  The Court will address the status of all unserved defendants infra.

referenced in the charge and there is not a clear identity of interest between these defendants and plaintiff's employer(s).

Applying the <u>Romero</u> factors, it is clear that the Ardent Defendants, except for AHS Management Services of Oklahoma, LLC, should be dismissed, because they were not given notice of the EEOC proceedings and lacked a clear identity of interest with plaintiff's actual employer. First, plaintiff could have ascertained the identity of her employer when she filed her EEOC charge, and it appears that her EEOC charge put the proper parties on notice. When she filed her charge, the owner of Pawnee Municipal Hospital was Pawnee Healthcare Properties, LLC and this party is not asserting that it lacked notice of the EEOC proceedings. The Ardent Defendants state that, prior to July 1, 2006, AHS Pawnee Hospital, LLC held a meeting for its employees notifying them of the pending sale and identifying their future employer. Dkt. # 145, Ex. 6. This should have placed plaintiff on notice of the proper corporate identity of her employer. Second, the interests of the unnamed parties are not so similar that it was unnecessary for plaintiff to include them in her EEOC charge. The Ardent Defendants are simply corporate entities that are part of the Ardent enterprise, but they had no direct responsibility for the control or management of Pawnee Municipal Hospital. While Pawnee Municipal Hospital was part of the broader Ardent enterprise, the hospital was managed by AHS Pawnee Hospital, LLC and this entity was wholly owned by AHS Oklahoma Health System, LLP. It is not reasonable for the Court to assume that each Ardent entity had such a close identity of interest that it should be treated as having constructive notice of plaintiff's EEOC charge. Third, the unnamed parties did not receive notice of plaintiff's EEOC charge and could not have participated in the conciliation process. Fourth, the unnamed parties did not make any representation to plaintiff that they had a continuing interest in Pawnee Municipal Hospital through

Pawnee Healthcare Properties, LLC.  Plaintiff should have been aware of the identity of her employer and also should have known that Ardent and its subsidiaries no longer had an ownership interest in the hospital.

Plaintiff has not shown that any Ardent entity, other than AHS Pawnee Hospital, LLC and Ardent Management Services of Oklahoma, LLC, had any role in the management of Pawnee Municipal Hospital.  The Court had previously advised plaintiff's counsel that these two entities employed plaintiff before August 1, 2006, and defense counsel was willing to stipulate to the identity of her employer.  Dkt. # 134, at 5, 37.  Magistrate Judge Joyner also advised plaintiff's counsel on May 27, 2008 that she had all the information she needed to identify plaintiff's employer, and warned her that the failure to dismiss unnecessary parties could result in Rule 11 sanctions.  It is unclear why plaintiff has continued to pursue claims against numerous entities with no relationship to her employer, when this has merely delayed discovery on the merits and a final resolution of her claims.  Ardent Health Services, LLC, AHS Holdings, Inc., AHS Management Company, Inc., AHS Oklahoma Health System, LLP, and Ardent Community Foundation should be dismissed as parties to this case.  Neither plaintiff's second amended complaint nor her response to the Ardent Defendants' motion to dismiss states any specific facts suggesting that these defendants employed her during the relevant time period.  At this time, the Court will not dismiss Ardent Management Services of Oklahoma, LLC due to plaintiff's failure to exhaust administrative remedies, because it is possible that plaintiff could allege sufficient facts showing that this entity employed her during the relevant time period and should be treated as having constructive notice of her EEOC charge.

### III.

Defendants ask the Court to dismiss plaintiff's second amended complaint under Rule 12(b)(6), because she has failed to state a claim upon which relief can be granted.  Plaintiff responds that she has alleged sufficient facts supporting each of her claims, and Defendants' motion to dismiss should be denied.

### A.

A motion to dismiss is properly granted when a complaint or counterclaim provides no "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007).  In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief may be granted.  The factual allegations within the claim "must be enough to raise a right to relief above the speculative level."  Id. (citations omitted).  "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 1969.  For purposes of making the dismissal determination, a court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant.  Id. at 1965; Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Moffett v. Halliburton Energy Servs., Inc., 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature. Erikson v. Pawnee County Bd. of County Comm'rs, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted).  "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  Hall v. Bellman, 935

F.2d 1106, 1109-10 (10th Cir. 1991).  In sum, the claimant must allege facts sufficient to state a claim for relief that is plausible on its face.  <u>Twombly</u>, 127 S. Ct. at 1974.

### B.

Defendants Pawnee Healthcare Properties, LLC, Community Partners, LLC, and Bristow Healthcare Properties, LLC, join in the Ardent Defendants' motion to dismiss plaintiff's sexual harassment claim to the extent that these defendants argue that plaintiff fails to state a sexual harassment claim under Title VII.  In her EEOC charge, plaintiff plainly stated that the alleged harassment stopped after a co-worker reported the harassment to her employer.  Dkt. # 145, Ex. 1. Plaintiff responds that her second amended complaint contains numerous allegations concerning her employer's knowledge of Dr. Clymer's conduct and she has alleged that her employer took no action to stop his harassment, and she should be permitted to proceed with her sexual harassment claim.

Defendants argue that the factual allegations of plaintiff's EEOC charge establish that her employer adequately responded to Dr. Clymer's improper behavior after it received notice of his conduct.  In such cases, "the plaintiff must establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment."  <u>Adler v. Wal-Mart Stores, Inc.</u>, 144 F.3d 664, 673 (10th Cir. 1998) (quoting <u>Harrison v. Eddy Potash, Inc.</u>, 112 F.3d 1437, 1444 (10th Cir. 1997)).  "An employer is absolved of liability for acts of harassment by its employees if it undertakes remedial and preventative action 'reasonably calculated to end the harassment.'"  <u>Duncan v. Manager, Dep't of Safety, City and County of Denver</u>, 397 F.3d 1300, 1310 (10th Cir. 2005).  When harassment stops, this shows that an employer's response to notice of improper conduct was effective and this prohibits liability under Title VII.

Tademy v. Union Pac. Corp., 520 F.3d 1149, 1165-66 (10th Cir. 2008); Scarberry v. Exxonmobil

Oil Corp., 328 F.3d 1255, 1259 (10th Cir. 2003).

Although plaintiff's EEOC charge states that the harassment stopped after a co-worker

informed management of the alleged harassment, plaintiff's second amended complaint does state

that her employer was aware of Dr. Clymer's conduct and failed to take any action to prevent further

sexual harassment.  The second amended complaint includes the following allegations:

> 11.   Plaintiff informed members of the staff at Pawnee Municipal Hospital of the unwelcomed [sic] sex discrimination.

> 12.   The Pawnee Municipal Hospital did not have a full time Human Resources office representative on site.

> 28.   Plaintiff feared adverse employment action would be taken against her by Defendants as a result of Dr. Clymer's offensive touching of Plaintiff during her employment and Defendant Clymer's other acts of sexual harassment, of sex discrimination and of creating a sexually hostile work environment.

> 29.   No internal policy or procedure existed for Plaintiff and others who were similarly situated to report unlawful (gender discrimination) sexual harassment in the work place.

> 35.   Defendants knew or should have known of the continuing sexually hostile work environment, unlawful sexual harassment and sex discrimination.  Defendants took no action to stop the unlawful actions.

> 42.   Defendants' managers and supervisors, acting within the scope of their authority, including but not limited to those who directly supervised Plaintiff, failed to take any action to prevent unlawful discrimination in the work place.

Dkt. # 140, at 6, 8, 9.  On a motion to dismiss, the Court must assume that plaintiff's factual

allegations are true and make all inferences in favor of plaintiff.  Applying this standard, the Court

finds that plaintiff has sufficiently alleged that her employer was aware of Dr. Clymer's conduct and

failed to act to prevent further sexual harassment.  Plaintiff's statement in her EEOC charge that the

harassment stopped immediately upon her co-worker's report to management raises concern about

the veracity of facts alleged in the second amended complaint.  However, the Court is ruling on a motion to dismiss and must assume that the allegations of the second amended complaint are true.[9] Defendants' motion to dismiss plaintiff's sexual harassment claim for failure to state a claim should be denied.

**C.**

Defendants ask the Court to dismiss plaintiff's claim of intentional infliction of emotional distress because there is no possibility that her employer acted in an extreme or outrageous manner under Oklahoma law.  Plaintiff includes many allegations concerning the impropriety of Dr. Clymer's conduct, but defendants argue that there are few allegations showing that plaintiff's employer acted in an extreme and outrageous manner.  Plaintiff responds that her complaint adequately alleges that her employer knew of the alleged sexual harassment and failed to take any action, and this is sufficient to state a claim of intentional infliction of emotional distress.

Oklahoma courts have recognized a cause of action for intentional infliction of emotional distress, also known as the tort of outrage.  See, e.g., Gaylord Entertainment Co. v. Thompson, 958 P.2d 128, 149 (Okla. 1998).  The action is governed by the narrow standards laid out in the

---

[9]    The Court reminds plaintiff's counsel that the allegations of the second amended complaint must be supported by evidence or it must be likely that the allegations will be supported by evidence after further discovery.  The allegations of plaintiff's EEOC charge, made by plaintiff herself without the filter of an attorney, suggest that Dr. Clymer's harassment ended immediately after her employer received an informal report of sexual harassment.  However, plaintiff's second amended complaint alleges that her employer knew of the sexual harassment and failed to take any action to prevent further harassment.  The Court reminds plaintiff's counsel of Rule 11 and, if she finds that the factual allegations of plaintiff's second amended complaint are not supported by evidence, she should request leave to file a third amended complaint removing any unsupported factual allegations or dismissing plaintiff's sexual harassment claim against the non-Clymer defendants.

17

Restatement Second of Torts, § 46. Id.  In Breeden v. League Services Corp., 575 P.2d 1374 (Okla. 1978), the Oklahoma Supreme Court explained:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arounse his resentment against the actor, and lead him to exclaim, 'Outrageous!'  The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Id. at 1376.  To state a claim, a plaintiff must allege that "(1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." Schovanec v. Archdiocese of Oklahoma City, 188 P.3d 158, 175 (Okla. 2008) (quoting Computer Publications, Inc. v. Welton, 49 P.3d 732, 735 (Okla. 2002)).

Under the narrow standard provided by Oklahoma law, the Court finds that plaintiff has not stated a claim for intentional infliction of emotional distress.  Assuming that plaintiff's allegations are true and making all inferences in favor of plaintiff, the non-Clymer defendants' conduct at most rises to the level of negligence and there is no possibility that these defendants have acted in an extreme and outrageous manner.  Plaintiff's allegations against Dr. Clymer may support an intentional infliction of emotional distress claim against him.  However, plaintiff's allegation that "[d]efendants knew or should have known" that Dr. Clymer was harassing her and failed to take action does not rise to the level of extreme and outrageous conduct.  Dkt. # 158, at 8.  In workplace harassment cases, Oklahoma appellate courts have found that a defendant engaged in extreme and outrageous conduct only when that defendant intentionally and persistently harassed the plaintiff. See Computer Publications, 49 P.3d at 736 (claim should have been submitted to a jury when

18

plaintiff presented evidence that harassment lasted more than two years and caused plaintiff to quit her job, move and repeatedly change phone numbers); <u>Miner v. Mid-America Door Co.</u>, 68 P.3d 212 (Okla. Civ. App. 2002) (employer's alleged failure to reassign the plaintiff after learning of workplace harassment, even if unreasonable, was not extreme and outrageous); <u>Gabler v. Holder & Smith, Inc.</u>, 11 P.3d 1269 (Okla. Civ. App. 2000) (noting that workplace harassment rarely rises to the level of extreme and outrageous conduct); <u>Mirzaie v. Smith Cogeneration, Inc.</u>, 962 P.2d 678 (Okla. Civ. App. 1998) (employer's conduct was not extreme and outrageous when, <u>inter</u> <u>alia</u>, the plaintiff's manager made derogatory sexual remarks about the plaintiff, woke plaintiff up in the middle of the night to do unnecessary work, and terminated him two hours before his wedding); <u>Zahorsky v. Community Nat'l Bank of Alva</u>, 883 P.2d 198 (Okla. Civ. App. 1994) (employer not liable for intentional infliction of emotional distress when an employee forced the plaintiff to have sex with him and employer failed to fire the employee, even though the employer allegedly knew about the conduct).

In this case, plaintiff's employer allegedly took no action when it knew or should have known about Dr. Clymer's improper behavior, but the allegations of the second amended complaint do not suggest that plaintiff's employer intentionally permitted Dr. Clymer's conduct to continue. In fact, plaintiff alleges that she did not tell her employer about the alleged sexual harassment and it appears that plaintiff believes her employer indirectly knew about the harassment. Dkt. # 140, at 8 (plaintiff states that she declined to report Dr. Clymer's harassment because she feared adverse employment action). While plaintiff's allegations may be sufficient to state a sexual harassment claim under Title VII, plaintiff has not alleged any facts which would permit the Court to infer that her employer(s) intentionally or recklessly allowed Dr. Clymer to harass her. Making all factual

inferences in favor of plaintiff, the Court finds that she has not alleged that her employer(s) engaged in extreme and outrageous conduct and her intentional infliction of emotional distress claim should be dismissed as to her employer(s).

### D.

Defendants argue that plaintiff's negligent hiring claim is barred by the exclusivity provisions of Oklahoma's Workers' Compensation Act, and they assert that she must bring this claim in workers' compensation court. Defendants also argue that plaintiff's negligent hiring claim is barred by the statute of limitations, because she did not file her claim within two years of the first instance of harassment. Plaintiff responds that she has sufficiently alleged a negligent hiring claim and she was not required to bring this claim in workers' compensation court. She does not respond to defendants' statute of limitations argument.

Plaintiff was not required to bring her negligent hiring claim in workers' compensation court. The Oklahoma Workers' Compensation Act provides the exclusive remedy for "the disability or death of an employee resulting from an accidental personal injury sustained by the employee arising out of and in the course of employment." OKLA. STAT. tit. 85, § 11; Griffin v. Baker Petrolite Corp., 99 P.3d 262, 265 (Okla. Civ. App. 2004). Plaintiff has not alleged that she suffered an accidental workplace injury or disability. Instead, she asserts that Dr. Clymer intentionally subjected her to sexual harassment and her employer(s) should be held liable for hiring Dr. Clymer without conducting a reasonable investigation into his background. Emotional anguish or distress suffered as a result of harassment is not the type of claim that may be brought in workers' compensation court and this is the appropriate subject of a common-law negligence claim. Morris v. City of Oklahoma City, 625 P.2d 634, 637 (Okla. Civ. App. 1980).

Defendants also argue that plaintiff's negligent hiring claim is barred by the statute of limitations, because she did not bring her claim within two years of the inception of Dr. Clymer's harassment.  The second amended complaint alleges that Dr. Clymer began harassing plaintiff on November 5, 2005 and the harassment continued until August 19, 2006.  Dkt. # 140, at 5. Defendants assert that the statute of limitations as to plaintiff's negligent hiring claim began on November 5, 2005, but she did not file her lawsuit until December 27, 2007.  Under Oklahoma's statute of limitations, a plaintiff has two years to file a negligence claim after the claim has accrued. OKLA. STAT. tit. 12, § 95.  The statute of limitations for a negligence action begins to run when "(1) the negligent act has occurred and (2) the plaintiff has suffered damages."  Marshall v. Fenton, Fenton, Smith, Reneau & Moon, P.C., 899 P.2d 621, 624 (Okla. 1995).   However, plaintiff's negligent hiring claim is against her employer(s), not Dr. Clymer, and the initial date of harassment may not be the applicable date for determining when her cause of action accrued.  At least part of plaintiff's claim is based on her employer(s)' alleged failure to investigate Dr. Clymer's  conduct during his employment and, thus, it is possible that her injury did not fully accrue until some time after November 5, 2005.  Dkt. # 140, at 13.  Defendants may renew their statute of limitations argument after the parties have been given an opportunity to conduct discovery concerning when plaintiff's employer(s) knew about her alleged injury, but this issue can not be resolved on a motion to dismiss.  Therefore, defendants' motion to dismiss is denied as to plaintiff's negligent hiring and supervision claim.

## IV.

The Ardent Defendants, except for AHS Management Services of Oklahoma, LLC, ask the Court to sanction plaintiff's counsel for joining them as parties without conducting an adequate

21

investigation and for refusing to dismiss them after receiving information that would have put a reasonable attorney on notice that plaintiff did not have a claim against these defendants.  In her response, plaintiff renews her allegations that defendants failed to provide complete and unredacted discovery responses and claims that she has a legitimate basis to believe that the Ardent entities listed in her second amended complaint are shell corporations created for the purpose of avoiding liability.  Dkt. # 166, at 11.

> Rule 11 provides that anyone who signs a pleading or motion must:
>
> certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for the extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  The Tenth Circuit has adopted an objective standard to determine if an attorney's actions justify sanctions under Rule 11.  White v. General Motors Corp., Inc., 908 F.2d 675, 680 (10th Cir. 1990).  The Court must consider whether "a reasonable and competent attorney would believe in the merit of an argument."  Dodd Ins. Servs., Inc. v. Royal Ins. Co. of America, 935 F.2d 1152, 1155 (10th Cir. 1991).  If a competent attorney could not have formed a reasonable belief that a claim is "well grounded in fact and is warranted by existing law, then such conduct is sanctionable under Rule 11."  Adamson v. Bowen, 855 F.2d 668, 673 (10th Cir. 1988).

22

However, the procedural requirements of Rule 11 have not been satisfied and defendants' motion is not properly before the Court.  The motion for sanctions was filed as a separate pleading from defendants' motion to dismiss and specifically describes the conduct which allegedly violates Rule 11.  Fed. R. Civ. P. 11(c)(2).  Counsel for the Ardent Defendants sent a letter to plaintiff on June 2, 2008 stating that he would file a motion for sanctions and he attached an incomplete draft of the sanctions motion to the letter.  The draft was two pages long and included an opening paragraph stating that the Ardent Defendants would seek sanctions under Rule 11.  However, the draft did not specifically state the basis for sanctions under Rule 11 and it is not the same motion that is before the Court.  The Tenth Circuit has strictly construed Rule 11's safe harbor provision and has held that a party seeking sanctions must serve the actual motion for sanctions on the opposing party at least 21 days before filing the motion with a court.  Roth v. Green, 466 F.3d 1179, 1191-92 (10th Cir. 2006).  The safe harbor requirement is not satisfied when a party moving for sanctions sends opposing counsel a letter describing the basis for sanctions, in lieu of serving the actual motion for sanctions.  Id. at 1192.  While plaintiff's counsel may have acted unreasonably by joining parties with little or no relationship to plaintiff's employer(s), the Court may not consider defendants' motion for sanctions when they did not comply with the procedural requirements of Rule 11.[10]

---

[10]   The Court has the power to sanction plaintiff's counsel on its own initiative under Rule 11(c)(3).  If plaintiff's counsel fails to dismiss any other parties that were not her employer in a timely manner, the Court may consider imposing sanctions without a motion from any of the remaining defendants.  The Court finds that plaintiff should be given an opportunity to dismiss any unnecessary parties before initiating sanction procedures, but the Court will monitor this case to ensure that plaintiff's counsel takes appropriate steps to dismiss any party that was not her employer.

23

**V.**

The Court has reviewed the docket sheet and finds that plaintiff has not served defendants Ardent Medical Management Company, Inc., Ardent Healthcare Corporation, and AHS Pawnee Hospital.  Defendant AHS Pawnee Hospital was named in plaintiff's original complaint and her extended deadline to serve this defendant expired on June 24, 2008.  Dkt. # 24.  Defendants Ardent Medical Management Company, Inc. and Ardent Healthcare Corporation were first named as defendants in plaintiff's amended complaint, and her deadline to serve them was September 1, 2008.[11]  Under Fed. R. Civ. P. 4(m), the Court may sua sponte dismiss a party that has not been timely served after giving the plaintiff an opportunity to show cause why the party has not been served.  Sanders v. Southwestern Bell Telephone, L.P., 544 F.3d 1101, 1111 (10th Cir. 2008).  Plaintiff is hereby placed on notice that the Court intends to dismiss any unserved parties, and plaintiff is ordered to show cause within 11 days of the Opinion and Order why defendants Ardent Medical Management Company, Inc., Ardent Healthcare Corporation, and  AHS Pawnee Hospital have not been served.  If plaintiff does not show good cause for her failure to serve these defendants, her claims against them will be dismissed without prejudice.[12]  Instead of filing a response, plaintiff may dismiss these defendants if she has no basis to believe that these defendants were her employer.

**IT IS THEREFORE ORDERED** that Defendants' [AHS Management Services of Oklahoma, LLC, AHS Holdings, Inc., AHS Management Company, Inc., AHS Oklahoma Health System, LLP, Ardent Health Services, LLC, and Ardent Community Foundation, Inc.] Renewed

---

[11]     Plaintiff's amended complaint was filed on May 2, 2008 and she had 120 days, or until September 1, 2008, to serve any new defendants added in her amended complaint.

[12]     The Court advises plaintiff that any other defendant's alleged failure to provide incomplete or unredacted discovery responses does not constitute good cause for failing to serve a party.

24

Motion to Dismiss All Claims Against Defendants and Incorporated Brief in Support (Dkt. # 145) and Pawnee Healthcare Properties, LLC's; Community Partners, LLC's; and Bristow Healthcare Properties, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support (Dkt. # 148) are **granted in part** and **denied in part**.  Defendants AHS Holdings, Inc., AHS Management Company, Inc., AHS Oklahoma Health System, LLP, Ardent Health Services, LLC, and Ardent Community Foundation are **dismissed** as parties to this case.  Plaintiff's intentional infliction of emotional distress claim (Count Two of the Second Amended Complaint) is **dismissed** as to the non-Clymer defendants.  The motions are denied in all other respects.

  **IT IS FURTHER ORDERED** that Defendants' Motion for Sanctions and Incorporated Brief in Support (Dkt. # 162) is **denied** without prejudice to refiling.

  **IT IS FURTHER ORDERED** that Defendants' Motion to Extend Deadline to File Dispositive Motions (Dkt. # 199) is **granted**.  The dispositive motion deadline is extended to **January 23, 2009**.

  **IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss All Claims Against Defendants and Incorporated Brief in Support (Dkt. # 37), the Motion to Dismiss of Defendants Pawnee Healthcare Properties, LLC; Community Partners, LLC; and Bristow Healthcare Properties, LLC and Brief in Support (Dkt. # 54), Defendants' Amended/Supplemental Motion to Dismiss All Claims Against Defendants and Incorporated Brief in Support (Dkt. # 106), Defendant Ardent Community Foundation, Inc.'s Motion to Dismiss All Claims Against It and Incorporated Brief in Support (Dkt. # 108), and Defendants' Motion to Stay Discovery and Remaining Deadlines (Dkt. # 171) are **moot**.

**IT IS FURTHER ORDERED** that plaintiff shall show cause, within eleven (11) days from the date this Opinion and Order is filed, for her failure to serve defendants Ardent Medical Management Company, Inc., Ardent Healthcare Corporation, and AHS Pawnee Hospital, **or her claims against them will be dismissed.**

**DATED** this 15th day of December, 2008.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT